UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RIVERA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>LOZANO, et al.,<br><br>　　　　　　Defendants. | **Case No. 1:15-cv-01887-JLT (PC)**<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**(Doc. 14)**<br><br>**30-DAY DEADLINE** |

　　　　The Court must dismiss Plaintiff's First Amended Complaint because, as discussed in detail below, it fails to state any claims that are cognizable under 42 U.S.C. § 1983. However, the Court will grant Plaintiff **one final opportunity** to correct the deficiencies in his pleadings.

**A.　　Screening Requirement**

　　　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If an action is dismissed on one of these three basis, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has

not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

B. **Summary of Plaintiff's Allegations**

Plaintiff complains of incidents that occurred at Kern Valley State Prison ("KVSP"). As in his original complaint, Plaintiff names a number of Defendants by name and others by position. Plaintiff's allegations continue to be disjointed, illogical, and fanciful.[1]

When screening his original complaint, the Court observed,

> Plaintiff alleges that he is being mentally and physically tortured and requests an investigation and that the torture be stopped. Plaintiff alleges that all of the Defendants are "absorbing everything out of [his] brain and replacing it with nonsence [sic] had [sic] denying [him] grooming" (Doc. 1, p. 3); that he is being physically tortured, raped, and abused (*id.*); they "manipulate" his eyes because he is against rapists and homosexuals (*id.*); that they make Plaintiff harm himself to the point that he "lost 60% of his blood" (*id.*, at p. 4); they deny his eating and exercising in his cell "as well as reading and writing. By them [sic] putting videos of child pornography in [his] eyes" (*id.*); and that in 2013 he was pulled of his cell "and one of these voices injected me leaving unsound or what one would call 'crazy'" (*id.*).

(Doc. 9 at 2)  His allegations in the FAC continue along these same lines.  Plaintiff alleges that Lozano used his "IGI tactics" attempting to get Plaintiff to volunteer for an experiment regarding solitary confinement. (Doc. 1, p. 3.)  Plaintiff alleges that Lozano passed out the addresses of his family members and loved ones in an attempt to black-mail Plaintiff into being involved in the experiment. (*Id.*, p. 4.)

Plaintiff alleges that Phillips and Err told general population inmates that they were using Plaintiff's eyeballs as cameras and that B. Valdez told him that people told her to show Plaintiff her lips if he wanted to submit to torture, and he asks "Why am I being held accountable for this peoples broken plates?" (*Id.*)  Plaintiff alleges these three Defendants told him that if he wanted "to put a stop to all this torture/abuse/rape?" his way out is to commit suicide. (*Id.*)  Plaintiff alleges C. Brian told Plaintiff she was trying to help him by moving him "to another building, which was a lie." (*Id.*)  Plaintiff alleges that he brought this up to Capt. Lesniac and tried to reach

---

[1] All materials in quotations are duplicated exactly as they appear in the First Amended Complaint.  No effort has been made to correct grammatical and other errors in quoted allegations.  Further, *all* of Plaintiff's allegations are summarized here.

2

1   out to the Assistant Warden, Chief Deputy Warden, and the Warden "since they know of their
2   technology & their serounding in their prison & they told me that its <u>not</u> enough evidence to
3   continue with this investigation, which they know what this technology is capable of." (*Id.*, pp. 4-
4   5 (emphasis in original).)  Plaintiff alleges Capt. Coplan IGI also "knows of this technology" too,
5   but everyone refuses to put a stop to it.  (*Id.*, p. 5.)

6         Plaintiff alleges that Dr. Kumar refused "to put a stop to this torture/abuse/rape/spying
7   when he as the power to" and that C/Os E. Martinez and D. Lee told Plaintiff they were going to
8   make a call and put a stop to it, but did not do so.  (*Id.*, p. 6.)  Plaintiff also alleges C/O E.
9   Martinez told him once that he was behind "all of this" and for Plaintiff not to send inmate
10  request forms "if I continue to I was going to keep my copy as a memory." (*Id.*)

11        Plaintiff alleges that Sgt. Iverson "one time put a man's private part behind me and used
12  this computer in advance to keep me calm since he was denying I was Rivera at Committee in
13  front of all Committee. Where Dr. Howard was present & the Sergeant Iverson spoke about what
14  they were doing to me in person and Dr. Howard refuse to stop to it along with Committee & said
15  I wasn't Rivera." (*Id.*)  Capt. Tyson is allegedly aware of the technology and told Plaintiff he was
16  going to call maintenance "to regulate this frequency on the voices, which was a lie, he never
17  regulated" and that Plaintiff told him to "stop all this abuse & spying & disconnect me to
18  whichever computer they have me connected to."  (*Id.*, pp. 6-7.)

19        A. Robles allegedly once told Plaintiff that "(They?) gave up my brain that she was
20  involved in the triangle, which that's what they called this supposebly torture." (*Id.*, p. 7.) Dr.
21  Howard allegedly told Plaintiff "she was involved with this torture along with CDCR, and the
22  Government." (*Id.*)

23        Plaintiff asserts that these allegations amount to violations of his rights under the Eighth
24  Amendment and of his rights to association and speech.  (Doc. 14, p. 3.)  As the examples above
25  show, Plaintiff's allegations are not facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
26  (2009).  Though he has now linked various Defendants with statements and/or activities, his
27  claims are not cognizable since not facially plausible.  Thus, he is given general pleading
28  standards and the standards under the First and Eight Amendments and **<u>one final opportunity</u>** to

3

file an amended complaint.

**C.     Pleading Requirements**

    **1. Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

Though the First Amended Complaint is not lengthy, it is convoluted and disjointed and does not contain a short and plain statement of the claim showing that he is entitled to relief as Rule 8 requires. If he chooses to file a second amended complaint, Plaintiff should endeavor to make it as concise as possible and under twenty-five pages in length. He should merely state which of his constitutional rights he feels were violated by each Defendant and its factual basis.

**2. Linkage Requirement**

The Civil Rights Act requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under 42 USC § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff must clearly state which Defendant(s) he feels are responsible for each violation of his constitutional rights and their factual basis as his complaint must put each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

**D. <u>Claims for Relief</u>**

    **1. Eighth Amendment**

        **a. Excessive Force**

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." *Farmer v. Brennan*, 511 U.S. 825 (1994); *Hoptowit v. Ray*, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); *see also Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir.1988), *cert. denied*, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal

behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F.Supp. 797, 800 (N.D. Iowa 1992) (citation omitted), *aff'd,* 973 F.2d 686 (8th Cir.1992). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer,* 511 U.S. at 834, (*quoting Rhodes*, 452 U.S. at 347).

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7. The extent of a prisoner's injury is also a factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *Id.* Although the absence of serious injury is relevant to the Eighth Amendment inquiry, it is not determinative. *Id.* That is, use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injury. *Id.* at 9.

### b. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference. . . ." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v.*

6

*County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer* at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

### c. Sexual Abuse

The Eighth Amendment prohibits cruel and unusual punishment in penal institutions. Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian,* 503 U.S. 1, 8 (1992).

Sexual harassment or abuse of an inmate by a corrections employee is a violation of the Eighth Amendment. *Wood v. Beauclair* , 692 F.3d 1041, 1045-46 (9th Cir. 2012) citing *Schwenk v. Hartford,* 204 F.3d 1187, 1197 (9th Cir.2000) ("In the simplest and most absolute of terms ... prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse...."); *see also Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia,* 877 F.Supp. 634, 665 (D.D.C.1994) ( "[U]nsolicited touching of ... prisoners' [genitalia] by prison employees are 'simply not part of the penalty that criminal offenders pay for their offenses against society' " (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970 (1994))), *aff'd in part and vacated in part,* 93 F.3d 910 (D.C.Cir.1996).

""[S]exual contact between a prisoner and a prison [employee] serves no legitimate role and is simply not part of the penalty that criminal offenders pay for their offenses against society. Where there is no legitimate penological purpose for a prison official's conduct, courts have 'presum[ed] malicious and sadistic intent.'" *Wood,* 692F.3d at 1050-51, quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir.1999); also citing *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir.1997). Even sexual contact which is not violent and leaves no physical injury is given this presumption. *Id*.

"At its core, the Eighth Amendment protects 'the basic concept of human dignity' and forbids conduct that is 'so totally without penological justification that it results in the gratuitous

7

infliction of suffering.'"  *Wood,* 692F.3d at 1050-51, quoting *Gregg v. Georgia*, 428 U.S. 153, 182–83, 96 S.Ct. 2909 (1976).  Sexual assault on a prisoner by a prison employee is always "deeply 'offensive to human dignity' " and is completely void of penological justification.  *Schwenk*, 204 F.3d at 1196.

### d.  Medical Care

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendants' response to the need was deliberately indifferent."  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

The existence of a condition or injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994).  For screening purposes, Plaintiff's lower back pain is accepted as a serious medical need.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319).  "Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

### 2. First Amendment

"In a prison context, an inmate does not retain those First Amendment rights that are 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Pell v. Procunier*, supra, at 822. Prisons, it is obvious, differ in numerous respects from free society. To begin with, they are involuntarily populated by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance. In seeking a "mutual accommodation between institutional needs and objectives (of prisons) and the provisions of the Constitution that are of general application," *Wolff v. McDonnell*, 418 U.S., at 556, the [Supreme] Court has repeatedly recognized the need for major restrictions on a prisoner's rights. *See, e.g.*, *Id.*, 418 U.S., at 561-562; *Lanza v. New York,* 370 U.S. 139, 143 (1962). These restrictions have applied as well where First Amendment values were implicated. *Jones*, 433 U.S. at 129-30 *citing Pell v. Procunier*, supra; *Procunier v. Martinez*, 416 U.S. 396 (1974); *Meachum v. Fano*, 427 U.S. 215 (1976).

"An inmate does not retain rights inconsistent with proper incarceration," and "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162, 2167 (2003). Accordingly, "[s]ome curtailment of that freedom must be expected in the prison context." *Id.*

### 3. Supervisory Liability

Plaintiff may have named some Defendants merely because they hold supervisorial positions at KVSP. However, supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations

and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 677.  "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.* Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct. *Id.*

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)).  "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.*

Thus, any allegations that supervisory personnel violated Plaintiff's rights and are somehow liable because of the acts of those under his or her supervision does not state a cognizable claim.

E.   **CONCLUSION**

For the reasons set forth above, Plaintiff's First Amended Complaint is dismissed with leave to file a second amended complaint within thirty days.  **This is the last opportunity Plaintiff will be given to correct the deficiencies in his pleading**.  Alternatively, within that same time frame, Plaintiff should file a notice of voluntary dismissal if he decides not to pursue this action further.  If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time before the deadline expires.

Plaintiff must demonstrate in any second amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v.*

*Cassidy*, 625 F.2d 227 (9th Cir. 1980).  A second amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

A second amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  The Court provides Plaintiff with **one final opportunity** to amend to cure the deficiencies identified by the Court in this order.  *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, the Court **ORDERS**:

1. Plaintiff's First Amended Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form; and
3. **Within 30 days** from the date of service of this order, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal.

///
///
///

**<u>If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.</u>**

IT IS SO ORDERED.

Dated:   **November 22, 2016**                          **/s/ Jennifer L. Thurston**
                                                                                  UNITED STATES MAGISTRATE JUDGE